UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Mohammad Hamad,   Case No. 3:15-cv-1657

        Plaintiff

    v.   MEMORANDUM OPINION

Cedar Fair L.P., et al.,

        Defendants

This matter is before me on Defendants' motion to enforce the settlement they reached with Plaintiff Mohammad Hamad. (Doc. No. 33). Plaintiff opposed (Doc. No. 36) and Defendants replied (Doc. No. 37). For the reasons below, I grant Defendants' motion to enforce the settlement.

**STANDARD**

"It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988) (quotation marks omitted). This remains true even if the agreement has yet to be put in writing. *Id.* Settlement agreements are contracts and, as such, are governed by contract law. *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152. So the validity and enforceability of the settlement agreement between the parties is determined by applying state substantive law generally governing contracts. *Id.*

"Where the parties enter into a settlement agreement in the presence of the court, such an agreement constitutes a binding contract." *Walther v. Walther*, 657 N.E.2d 332, 335 (Ohio App. Ct. 1995) (citing *Spercel v. Sterling Indus., Inc.*, 285 N.E.2d 324, 327 (Ohio 1972)); *Smith v. ABN AMRO Mortg. Grp. Inc.*, 434 F. App'x 454, 463-64 (6th Cir. 2011). The agreement does not have to be fair and equitable, so long as it was not procured by fraud, duress, overreaching, or undue influence. *Id.*

## DISCUSSION

The parties participated in a settlement conference before Magistrate Judge James R. Knepp, II on March 28, 2017, at which time they reached an agreement that would resolve the case. The terms of their agreement were put on the record. (Doc. No. 35). On March 29, 2017, Mr. Hamad, despite being represented by counsel, filed a pro se motion asking for a hearing or trial to be scheduled in April or May of 2018. (Doc. No. 30). On April 5, 2017, Hamad left the United States and traveled to Israel to stay with his daughters indefinitely.

On May 18, 2017, I held a telephonic status conference with counsel and the parties to address Mr. Hamad's motion for hearing or trial. (Doc. No. 32). Mr. Hamad stated that he feels he was forced into the settlement and is therefore unwilling to accept it. Following the conference, Defendants filed their motion to enforce the settlement. (Doc. No. 33).

In response, Mr. Hamad argues he was under duress and undue influence at the time he agreed to the settlement terms. (Doc. No. 36 at 5). Mr. Hamad explains he thought he would be given an opportunity to tell his side of the story and present evidence, so Judge Knepp would have the information Mr. Hamad felt he needed to facilitate a fair settlement agreement. (*Id.* at 3). Mr. Hamad also points to the presence of an unknown man in the courtroom at some point during the settlement conference. (*Id.* at 3-5). Mr. Hamad also noted that Cedar Fair representative Kathy Hawkinson left prior to the conclusion of the conference. (*Id.* at 3). Finally, Mr. Hamad claims he felt unduly influenced because he was set to leave the country within a week of the settlement conference. (*Id.* at 5).

As an initial matter, I find an evidentiary hearing is unnecessary in this case, as the record establishes the parties reached an agreement on all the material terms of the settlement. *See RE/MAX Intn'l, Inc. v. realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001).

Turning next to Mr. Hamad's claims of undue influence and duress, I find he has failed to establish either defense to the enforceability of the settlement agreement.

"The elements of undue influence are: 1) a susceptible party; 2) another's opportunity to influence the susceptible party; 3) the actual or attempted imposition of improper influence; and 4) a result showing the effect of the improper influence." *Firestone v. Galbreath*, 895 F. Supp. 917, 931 (S.D. Ohio Aug. 9, 1995).

Mr. Hamad's claim fails on the third element: that someone attempted to or actually did exert improper influence on him. Judge Knepp's perceived lack of information and Mr. Hamad's impending international travel do not support such a claim. Neither does Ms. Hawkinson's departure from the settlement conference prior to its end time. Ms. Hawkinson did not leave the conference until a settlement was reached and Cedar Fair had committed to the agreed-upon terms. (Doc. No. 35 at 2). So she cannot be said to have exerted improper influence over Mr. Hamad by leaving early. Finally, though Mr. Hamad claims he felt pressure to consent to the terms because of the presence of an unknown man in the courtroom, Mr. Hamad fails to demonstrate that this individual attempted to or succeeded in exerting improper influence over him. Barring extraordinary circumstances necessitating confidentiality, court proceedings are open to the public. The mere presence of an unidentified observer, without more, cannot sustain a claim of undue influence.

As for duress, the elements are "(1) one side involuntarily accepted the terms of another; (2) circumstances permitted no other alternative; and (3) said circumstances were the result of coercive acts of the opposite party." *Blodgett v. Blodgett*, 551 N.E.2d 1249, 1251 (Ohio 1990) (emphasis omitted). "It is not enough to show that one assented merely because of difficult circumstances that are not the fault of the other party." *Id.* at 1251-52.

Here, Mr. Hamad's claim fails on the third element. To prove the defense of duress, Mr. Hamad must prove his duress was the result of coercive actions performed by the other party to the agreement. The only act alleged that is attributable to the defendants is that Ms. Hawkinson left the conference early. But as I stated above, she did not leave until the terms of the settlement had been

fleshed out and Cedar Fair had committed to honoring those terms. (Doc. No. 35 at 2). So her early departure was not coercive.

As such, I find Mr. Hamad's claims of undue influence and duress to be without merit.

**CONCLUSION**

Accordingly, I grant Defendants' motion to enforce the settlement. (Doc. No. 33). Within 30 days of the filing of this opinion, Defendants shall deposit the settlement funds, in the amount of $10,000, with the Clerk of Court in the Court's Registry Fund, for distribution to Mr. Hamad. Mr. Hamad may then claim the funds from the Clerk in due course. This case is dismissed with prejudice, and Defendants are released from all claims against them by Mr. Hamad.

So Ordered.

                                        s/ Jeffrey J. Helmick
                                        United States District Judge